United States District Court
Southern District of Texas
**ENTERED**
December 13, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| DAMON EARL LEWIS, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-223 |
| | § | |
| UTMB MEDICAL STAFF, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION TO DISMISS CASE AND TO DENY PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF**

Plaintiff Damon Earl Lewis is a Texas inmate appearing *pro se* and *in forma pauperis*. He filed this prisoner civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff's case is subject to screening pursuant to the Prison Litigation Reform Act. *See* 42 U.S.C. § 1997e(c); 28 U.S.C. §§1915(e)(2), 1915A.

For purposes of screening, the undersigned recommends that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).[1]

[1] Plaintiff is **WARNED** that if he accumulates three strikes, he will not be allowed to proceed *in forma pauperis* in any civil action or appeal filed while he is incarcerated or detained in any facility unless he is under imminent danger of serious injury. *See* 28 U.S.C. § 1915(g).

## I. JURISDICTION

The Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. This case has been referred to the undersigned magistrate judge for case management and making recommendations on dispositive motions pursuant to 28 U.S.C. § 636.

## II. PROCEDURAL BACKGROUND AND PLAINTIFF'S ALLEGATIONS

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. Plaintiff's allegations arise in connection with his current housing assignment.

Plaintiff originally filed a "Writ of Injunction" which was docketed as a civil rights action against unknown medical staff. (D.E. 1). Plaintiff claimed that individuals from the unit's medical staff acted with deliberate indifference with respect to his broken jaw. Plaintiff initially sought injunctive relief in the form of being sent to a hospital for proper medical care.

On October 1, 2019, the undersigned conducted a telephone conference with Plaintiff. Plaintiff informed the Court he had recently received surgery to repair his broken jaw. Plaintiff stated, however, that medical officials were denying him antibiotic medications and other prescribed medications which were necessary to prevent infections from developing post-surgery. The undersigned construed Plaintiff's statements at the hearing as a motion seeking preliminary injunctive relief.

On October 7, 2019, the Office of the Attorney General (OAG) filed an amicus advisory as well as medical records showing that: (1) Plaintiff underwent oral surgery on

September 13, 2019; (2) Plaintiff was transferred to the McConnell Unit infirmary six days later; (3) Plaintiff's prescribed medications at the McConnell Unit infirmary were ordered upon Plaintiff's arrival and that he missed an occasional medication during the prescribed period; (4) Plaintiff refused medication on one occasion and was uncooperative with staff on another occasion; (5) on October 4, 2019, the medical provider ordered oral mouthwash and Motrin for Plaintiff; (6) Plaintiff was scheduled for a follow-up surgery in two weeks; and (7) Plaintiff currently receives oral mouthwash and Motrin. (D.E. 21, 22).

On October 8, 2019, the undersigned conducted a telephone hearing on Plaintiff's motion seeking preliminary injunctive relief. On October 15, 2019, Plaintiff filed an Amended Complaint naming the following eleven individual defendants: (1) John Doe Dentist; (2) second John Doe Dentist at John Sealy's Hospital Galveston; (3) Tanya Lawson, Senior Practice Manager; (4) Dr. Isaac Kwarteng, Medical Director; (5) Malvika Goyel, Nurse Practitioner (NP); (6) Jessica Espinoza, LVN; (7) Adriana Rincon, LVN; (8) Christina L. Quintanilla, LVN; (9) Lori A. Gonzalez, LVN; (10) Christi L. Reagan; and (11) Officer Destiny Davis. (D.E. 26).[2] Plaintiff asserts claims of deliberate indifference and retaliation against Defendants. He seeks monetary relief.

On November 7, 2019, the undersigned conducted a *Spears*[3] hearing. The following representations were made either in Plaintiff's amended complaint (D.E. 26) or

---

[2] Because Plaintiff has now identified all of the individual defendants he intends to sue, the undersigned recommends that the defendant named "UTMB Medical Staff" be dismissed.

[3] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985); *see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

at the *Spears* hearing. In 1995, Plaintiff shattered his jaw in an automobile accident. Plates were installed at that time to keep Plaintiff's jaw together. Plaintiff is now 57 years old.

In early July of 2019, one of Plaintiff's jaw plates on the right side bent and shifted to the right placing pressure on his inner ear. On or about July 9 or 10, 2019, a defendant identified as John Doe Dentist examined Plaintiff's jaw but did not order an x-ray or a special diet for Plaintiff. Plaintiff alleges John Doe Dentist sent Plaintiff back to his cell without further treatment.

On July 29, 2019, Plaintiff saw a second John Doe Dentist at the John Sealy Hospital. This defendant took an x-ray of Plaintiff's jaw and informed Plaintiff that the plates were fine and that his jaw was healed. Thus, according to Plaintiff, the second John Doe Dentist misdiagnosed the problem, failed to secure Plaintiff's jaw, and failed to place Plaintiff on a special liquid diet. Lastly, this defendant prescribed pain medication for Plaintiff and returned Plaintiff to the McConnell Unit with instructions to repair a cavity and pull one of Plaintiff's teeth.

Plaintiff sues Manager Lawson because she is head of the medical department and directly responsible for the actions of her staff. Likewise, Plaintiff sues Dr. Kwarteng because he is head of the physician's department and is directly responsible for the actions of his staff.

On August 14, 2019, NP Goyel saw Plaintiff on a sick call request. Plaintiff explained to her that he needed to be placed on a liquid diet because he had not eaten in

41 days. NP Goyel told Plaintiff he was not eligible for such a diet because his mouth was not wired shut. After Plaintiff left NP Goyel's office he attempted to eat mashed potatoes. His jaw shifted and went up into his inner ear causing extreme pain. Plaintiff returned to the medical department and requested help at the nurse's station. NP Goyel determined Plaintiff had previously been provided medication for pain. Plaintiff alleges NP Goyel walked away without providing further assistance. After leaving the medical department, Plaintiff later collapsed due to pressure on his inner ear.

Plaintiff returned to the medical department and waited for approximately two hours without being seen by a medical provider. Plaintiff alleges LVN Espinoza told him to keep it quiet and threatened to remove Plaintiff from medical department. Plaintiff then left the medical department on his own, prior to being seen by a medical provider. When Plaintiff reached his housing area, he lost his sense of balance and could not walk. Two inmates assisted Plaintiff to his cell. Plaintiff took his pain medication which lessened the pain and restored his balance. At or around 9:30 p.m. on August 14, 2019, Plaintiff attempted to return to the medical department due to the pain returning but he collapsed on the way. Plaintiff was placed on a gurney and transported to the Beeville Emergency Room, where he was given a shot of morphine and muscle relaxer to help his jaw bone retreat from pressing on his inner ear.

On August 15, 2019, NP Goyel placed Plaintiff on the liquid diet. As noted above, Plaintiff underwent surgery on September 13, 2019 to correct the problem with his jaw. After his surgery, the doctors provided Plaintiff with a soft-bristled toothbrush in order to protect the stitches in his jaw. Plaintiff alleges a member of the security staff

took Plaintiff's tooth brush from him for an unspecified reason. Plaintiff could not brush with the hard-bristled tooth brush given to him by the staff. Plaintiff went on a hunger strike at the John Sealy Hospital until he received his soft-bristled tooth brush. Plaintiff continued to take his medications.

When Plaintiff returned to the McConnell Unit, Plaintiff alleges prison officials did not return some of his property which was in his possession prior to leaving the unit for medical care. Plaintiff continued his hunger strike at the McConnell Unit until his property was returned. Plaintiff was scheduled to receive pain medications at various times after the surgery. However, LVNs Rincon, Quintanilla, Gonzalez, and Reagan each denied Plaintiff's his pain medication, antibiotic medication, and mouth wash because he would not eat anything. According to Plaintiff, food was not required for Plaintiff to take his prescribed medication. Plaintiff ended the hunger strike after seven days. Plaintiff subsequently engaged in conduct requiring him to be removed from the medical department and placed in disciplinary housing. Plaintiff proceeded to take his medications while in disciplinary housing. Plaintiff's property was never returned to him.

Officer Davis brought a disciplinary case against Plaintiff on September 19, 2019, charging Plaintiff with damaging property while he was housed in the unit's medical department. Despite the fact the incident never happened, Plaintiff was found guilty of the charges and punished with 46 days loss of commissary and 45 days of cell restrictions. Plaintiff went before the Unit Classification Committee, but his custody status was not affected. While Plaintiff believes the case may have been overturned, he

acknowledged that the punishments were still in place. Plaintiff testified that, as of November 7, 2019, his jaw feels fine.

**III. LEGAL STANDARD**

When a prisoner seeks to proceed *in forma pauperis* the Court shall evaluate the complaint and dismiss it without service of process if the Court finds the complaint frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A. *See* 28 U.S.C. § 1915(e)(2)(B) (providing that a court shall review an *in forma pauperis* complaint as soon as practicable and dismiss it if it is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from an immune defendant). A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998). A claim has no arguable basis in fact if "after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Talib v. Gilley,* 138 F.3d 211, 213 (5th Cir. 1998).

"In analyzing the complaint, [the Court] will accept all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Jones v. Greninger,* 188 F.3d 322, 324 (5th Cir. 1999). "The issue is not whether the plaintiff will ultimately prevail, but whether he is entitled to offer evidence to support his claim. Thus, the Court should not dismiss the claim unless the plaintiff would not be entitled to relief under any set of

facts or any possible theory that he could prove consistent with the allegations in the complaint." *Id.* (citations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiff must allege sufficient facts in support of its legal conclusions that give rise to a reasonable inference that Defendant is liable. *Id.*; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The factual allegations must raise Plaintiff's claim for relief above the level of mere speculation. *Twombly*, 550 U.S. at 555. As long as the complaint, taken as a whole, gives rise to a plausible inference of actionable conduct, Plaintiff's claim should not be dismissed. *Id.*

Section 1983 provides a vehicle for redressing the violation of federal law by those acting under color of state law. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004). To prevail on a § 1983 claim, the plaintiff must prove that a person acting under the color of state law deprived him of a right secured by the Constitution or laws of the United States. 42 U.S.C. § 1983; *West v. Atkins,* 487 U.S. 42, 48 (1988). A defendant acts under color of state law if he misuses or abuses official power and if there is a nexus between the victim, the improper conduct, and the defendant's performance of official duties. *Townsend v. Moya,* 291 F.3d 859, 861 (5th Cir. 2002).

## IV. DISCUSSION

### A. Eleventh Amendment Immunity and Official Capacity

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a

state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself, and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). The Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ officers and officials acting in their official capacities. *See Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent that Plaintiff sues each defendant in his or her official capacity for money damages, those claims are barred by the Eleventh Amendment. Thus, it is respectfully recommended that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment.

**B. Deliberate Indifference to Serious Medical Needs**

With the exception of Officer Davis, Plaintiff claims that Defendants acted with deliberate indifference to his serious medical needs. Prisoners are protected from cruel and unusual punishment by the Eighth Amendment. While not mandating a certain level of medical care for prisoners, the Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (citing *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)).

Prison officials are liable for failure to provide medical treatment if they are deliberately indifferent to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference may be exhibited by prison doctors in their response to prisoners' needs, but it may also be shown when prison officials have denied an inmate prescribed treatment or have denied him access to medical personnel capable of evaluating the need for treatment. *Id.* at 104-05. A prison official acts with deliberate indifference if she knows that an inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer*, 511 U.S. 825, 847 (1994). The official must both be aware of facts from which an inference of substantial risk of serious harm can be drawn and also draw the inference. *Easter*, 467 F.3d at 463. A prison official's knowledge of substantial risk may be inferred if the risk was obvious. *Id.*

"Deliberate indifference is an extremely high standard to meet." *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001). In the context of medical treatment, the prisoner must show "that prison officials refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (internal quotation marks and citation omitted). "A disagreement about the recommended medical treatment is generally not sufficient to show deliberate indifference, but the denial of recommended medical treatment is often sufficient to show deliberate indifference." *Carlucci v. Chapa*, 884 F.3d 534, 538 (5th Cir. 2018). Furthermore, a "delay in medical care can only constitute

an Eighth Amendment violation if there has been deliberate indifference [that] *results in substantial harm.*" *Easter v. Powell*, 467 F.3d 459, 464 (5th Cir. 2006) (emphasis in original).

As long as prison medical personnel exercise professional medical judgment, their behavior will not violate a prisoner's constitutional rights. *Youngberg v. Romeo*, 457 U.S. 307, 322-23 (1982). Furthermore, "unsuccessful medical treatment and acts of negligence or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with [his] medical treatment, absent exceptional circumstances." *Sama v. Hannigan*, 669 F.3d 585, 590 (5th Cir. 2012).

*(1) Manager Lawson and Dr. Kwarteng*

Plaintiff sues Manager Lawson and Dr. Kwarteng based on their roles as supervisors of their subordinate medical staff. "Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). It is well established that a prison supervisor cannot be held liable for the misconduct of his or her subordinates. *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Id.* at 303-04. *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials).

"Supervisory officials may be held liable only if: (1) they affirmatively participate in acts that cause constitutional deprivation; or (2) implement unconstitutional policies that causally result in plaintiff's injuries." *Mouille v. City of Live Oak, Tex.*, 977 F.2d

924, 929 (5th Cir. 1992). "Mere knowledge and acquiescence on a supervisor's part is insufficient to create supervisory liability under § 1983." *Doe v. Bailey*, No. H-14-2985, 2015 WL 5737666, at *9 (S.D. Tex. Sep. 30, 2015) (citing *Iqbal*, 556 U.S. at 677).

Plaintiff sues Manager Lawson and Dr. Kwarteng because they are heads of the medical department and physician's department, respectively. Plaintiff believes these supervisory defendants should be held responsible for their subordinates' conduct. Plaintiff fails to allege any facts, however, to suggest that Manager Lawson or Dr. Kwarteng participated in any acts violating Plaintiff's constitutional rights or implemented a policy resulting in a constitutional injury to Plaintiff. Accordingly, the undersigned respectfully recommends that Plaintiff's claims against Manager Lawson and Dr. Kwarteng in their supervisory capacities be dismissed with prejudice as frivolous and/or for failure to state a claim.

*(2) John Doe Dentists*

Plaintiff alleges that, in early July of 2019, his jaw plates on the right side bent and shifted to the right placing pressure on the inner ear. According to Plaintiff, the John Doe Dentist at the McConnell Unit examined Plaintiff's jaw but did not order Plaintiff an x-ray or a special diet for Plaintiff. Plaintiff alleges he was sent back to his cell in pain. Plaintiff's allegations further reflect that, before he received surgery approximately two months later for his jaw issues, he suffered pain and balance issues due to the jaw bone sliding into his inner ear.

Plaintiff's allegations suggest that John Doe Dentist examined Plaintiff but did not identify or diagnose the cause of Plaintiff's ailment or the severity of his medical

condition. Plaintiff's conditions were internal and were not of the type that were open or obvious. Plaintiff's complaint to John Doe Dentist was that he was in pain and that he was having problems with his jaw, but Plaintiff was otherwise alert and coherent. Plaintiff's allegations fail to allege this dentist was aware of a substantial risk of serious harm to Plaintiff. While this dentist's examination and treatment of Plaintiff may not have been thorough and may in fact have been negligent, the lack of the quality of care does not amount to deliberate indifference. *See Sama*, 669 F.3d at 590.

Plaintiff further alleges that, on July 29, 2019, he saw a second John Doe Dentist at the John Sealy Hospital Galveston. The second John Doe Dentist: (1) took an x-ray of Plaintiff's jaw and informed Plaintiff that the plates were fine and that the jaw was healed; (2) prescribed pain medication for Plaintiff; and (3) returned Plaintiff to the McConnell Unit with instructions to repair a cavity and pull a tooth on the bottom jaw. Plaintiff nevertheless complained that the second John Doe Dentist failed to secure Plaintiff's jaw and to place him a on a special liquid diet.

Plaintiff's allegations fail to suggest that the second John Doe Dentist refused to treat him, ignored his complaints, or engaged in any intentional conduct to show a wanton disregard to his serious condition. At best, Plaintiff's allegations indicate that the second Jon Doe Dentist committed medical malpractice or acted negligently, which does not rise to the level of an Eighth Amendment claim. *See Sama*, 669 F.3d at 590.

Plaintiff's allegations also reflect his disagreement with the second John Doe Dentist's medical care and diagnosis. Such disagreement with the medical care provided

for his serious medical condition fails to rise to the level of an Eighth Amendment violation. *See Sama*, 669 F.3d at 590.

Taken in isolation, the medial treatment provided by these dentists on these two occasions was less than ideal. However, the overall course of treatment that Plaintiff received in connection with his medical condition indicates he was not denied access to medical providers. When it was determined Plaintiff's condition was serious, he was taken to the Beeville hospital for emergency treatment. Plaintiff was later taken to the John Sealy Hospital in Galveston on at least two occasions where Plaintiff's jaw was treated through surgical intervention. Plaintiff testified on November 7, 2019, that his jaw feels fine.

Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against both John Doe Dentists be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

*(3) NP Goyel and LVN Espinoza*

Plaintiff alleges that, on August 14, 2019, NP Goyel saw Plaintiff on a sick call request but failed grant Plaintiff's request to be placed on a liquid diet despite Plaintiff having difficulty eating solid foods. Plaintiff further alleges that he collapsed outside of the medical department and returned on two occasions later that day in serious pain from his jaw bone shifting into his inner ear but that NP Goyel and LVN Espinoza did not provide medical assistance. According to Plaintiff, NP Goyel indicated that Plaintiff already had his pain medications. Plaintiff's allegations reflect that: (1) later that evening, he was transported to the Beeville Emergency Room, where he was given a shot

of morphine and muscle relaxer to help the bone retreat from the ear; and (2) the next day, NP Goyel placed Plaintiff on a liquid diet.

Plaintiff's allegations suggest that that NP Goyel and Nurse Espinoza did not appreciate the severity of Plaintiff's medical condition. However, Plaintiff had already been seen by the above referenced dentists at both the McConnell Unit and at the John Sealy Hospital in Galveston. The nurses' treatment of Plaintiff must be viewed in light of the dentists' prior diagnosis of Plaintiff's condition. In this light, their treatment of Plaintiff is not unreasonable and does not amount to deliberate indifference. Further, NP Goyel placed Plaintiff on a liquid diet after his return from the Beeville Hospital which indicates she appropriately altered Plaintiff's treatment when she received additional information about his condition.

Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against NP Goyel and Nurse Espinoza be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

*(3) LVNs Rincon, Quintanilla, Gonzalez, and Reagan*

Plaintiff alleges that, upon his return to the McConnell Unit after his jaw surgery on September 13, 2019: (1) Plaintiff engaged in a hunger strike at the McConnell Unit until he was given his property back; (2) Plaintiff was scheduled to receive his medications at various times after the surgery; (3) LVNs Rincon, Quintanilla, Gonzalez, and Reagan each denied Plaintiff's his pain medication, antibiotic medication, and mouth wash because he would not eat anything; (4) according to Plaintiff, food was not required for Plaintiff to take his prescribed medication; (5) Plaintiff ended the hunger strike after

seven days; and (6) Plaintiff began to consistently receive his medications after he was transferred to disciplinary housing.

Even accepting Plaintiff's allegations as true, he has failed to state a deliberate indifference claim against LVNs Rincon, Quintanilla, Gonzalez, and Reagan. First, Plaintiff's allegations reflect that he would have received his medications but for his own actions in undertaking a hunger strike. Second, Plaintiff fails to allege any facts to suggest that these defendants' actions subjected him to a substantial risk of serious harm. Plaintiff received his post-surgery medications and mouth wash upon being transferred to disciplinary housing. He further testified at the *Spears* hearing that his jaw issues have been repaired and that he feels fine. Accordingly, the undersigned recommends that Plaintiff's deliberate indifference claim against LVNs Rincon, Quintanilla, Gonzalez, and Reagan be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

**C. Retaliation**

Plaintiff claims that several defendants retaliated against him. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v. Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere

conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

*(1) LVNs Rincon, Quintanilla, Gonzalez, and Reagan*

Plaintiff claims that LVNs Rincon, Quintanilla, Gonzalez, and Reagan retaliated against him after he returned to the McConnell Unit following his jaw surgery on September 13, 2019. Specifically, Plaintiff alleges that these nurses retaliated by not giving him his prescribed medications and mouth wash during the seven days he was on a hunger strike to protest the prison officials' refusal to give him his property back.

As discussed above, "the invocation of a specific constitutional right is the first element of a retaliation claim." *Williams v. Sellers*, No. H-11-4287, 2014 WL 794191, at *11 (S.D. Tex. Feb. 26, 2014). Plaintiff, however, does not indicate that he ever filed a grievance against LVNs Rincon, Quintanilla, Gonzalez, and Reagan and that these defendants acted in response to the filing of same. Rather, Plaintiff's allegations reflect that these defendants acted against Plaintiff in response to his hunger strike. Plaintiff, however, does not retain a constitutional right to go on a hunger strike.

Furthermore, Plaintiff primarily relies on his personal belief that LVNs Rincon, Quintanilla, Gonzalez, and Reagan retaliated and not on specific facts setting forth a chronological series of events where retaliation can be inferred. Accordingly, the

undersigned recommends that Plaintiff's retaliation claims against LVNs Rincon, Quintanilla, Gonzalez, and Reagan be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

*(2) Officer Davis*

Plaintiff alleges that Officer Davis retaliated against him by bringing a disciplinary case against Plaintiff on September 19, 2019, which charged Plaintiff with damaging property while he was housed in the unit's medical department. Plaintiff further alleges that, despite the fact the incident never happened, Plaintiff was found guilty of the charges and punished with 46 days loss of commissary and 45 days of cell restrictions.

Plaintiff, however, fails to allege any facts to suggest that Officer Davis's actions were in retaliation for Plaintiff invoking a constitutional right. Plaintiff again relies on his personal belief that Officer Davis retaliated and not on specific facts setting forth a chronological series of events where retaliation can be inferred. Accordingly, the undersigned recommends that Plaintiff's retaliation claim against Officer Davis be dismissed with prejudice for failure to state a claim for relief and/or as frivolous.

**D. Motion for Preliminary Injunctive Relief**

During a telephone conference conducted with Plaintiff on October 1, 2019, Plaintiff stated that medical officials were denying him antibiotic medications and other prescribed medications which were necessary to prevent infections from developing after his jaw surgery post-surgery. Plaintiff's statements were construed as a motion seeking preliminary injunctive relief in the form of receiving his prescribed medications.

In order to obtain a preliminary injunction under Federal Rule of Civil Procedure 65, the movant must demonstrate: (1) a substantial likelihood of success on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the injunction is denied; (3) the threatened injury outweighs any damage that the injunction might cause the defendant; and (4) the injunction will not disserve the public interest. *Texans for Free Enterprise v. Texas Ethics Com'n*, 732 F.3d 535, 536-37 (5th Cir. 2013). Injunctive relief is an extraordinary remedy which requires the movant to unequivocally show the need for its issuance. *Sepulvado v. Jindal,* 729 F.3d 413, 417 (5th Cir. 2013) (internal citations and quotations omitted). Plaintiff must carry the burden as to all four elements before a preliminary injunction may be considered. *Voting for America, Inc. v. Steen*, 732 F.3d 382, 386 (5th Cir. 2013) (internal quotations and citations omitted).

Plaintiff has failed to establish an entitlement to preliminary injunctive relief. The OAG has presented medical records showing that Plaintiff generally received his medications as prescribed, with the exception of one or two occasions, and that he currently receives oral mouthwash and Motrin to carry on his person. (D.E. 21, 22). He further indicated at the *Spears* hearing that he feels fine following his jaw surgery. Thus, even assuming that Plaintiff could demonstrate a substantial likelihood of success on any of his underlying claims, he cannot show he will be subjected to irreparable harm should a preliminary injunction be denied. Accordingly, the undersigned respectfully recommends that Plaintiff's motion seeking preliminary injunctive relief be denied.

## V. RECOMMENDATION

For the reasons stated above and for purposes of § 1915A, it is respectfully recommended that Plaintiff's complaint be **DISMISSED with prejudice** for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1) for the reasons set forth below. The undersigned recommends further that the dismissal of this case counts as a "strike" for purposes of 28 U.S.C. § 1915(g).

ORDERED this 13th day of December 2019.

Jason B. Libby
United States Magistrate Judge

**NOTICE TO PARTIES**

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (en banc).